# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-cr-00001-JAD-CWH |
| Plaintiff, | **ORDER** |
| v. | (ECF Nos. 256, 257, 264, 270) |
| ANDERSON ALCANTARA, et al., | |
| Defendants. | |

This matter is before the court on defendant Anderson Alcantara's Motion to Compel (ECF No. 256), filed April 16, 2018, and the government's sealed response (ECF No. 306), filed May 29, 2018, as well as joinders by defendants Francisco Filho (ECF No. 257), filed April 18, 2018, Bruno Correia (ECF No. 264), filed April 24, 2018, and Andre Rodrigues (ECF No. 270), filed April 25, 2018. Alcantara did not file a reply.

## I. BACKGROUND

Numerous Brazilian nationals are alleged to have conspired to commit credit card fraud throughout the United States. The group's fraud activities took place over several years and were conducted by shifting assortments of members of the group. On January 3, 2017, a grand jury returned an indictment charging Alcantara with numerous crimes.[1]

---

[1] Count 1 – Conspiracy to Commit Fraud and Related Activity in Connection with Access Devices (18 U.S.C. § 1029(b)(2)); Counts 2, 18-20 – Use or Trafficking in Unauthorized Access Device (18 U.S.C. § 1029(a)(2)); Counts 3, 21-22, 26 – Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1)); Counts 4, 7, 10, 13, 27 – Possession of Access Device-Making Equipment (18 U.S.C. § 1029(a)(4)); Counts 8, 25 – Production, Use, or Trafficking of Counterfeit Access Device (18 U.S.C. § 1029(a)(1)); Count 28 – Possession of Fifteen or More Counterfeit or Unauthorized Access Devices (18 U.S.C. § 1029(a)(3)); Count 29 – Conspiracy to Commit Money Laundering (18 U.S.C. § 1956(h)); and Counts 30-47 – Money Laundering (18 U.S.C. § 1956 (a)(1)(A)(i); (a)(1)(B)(I)).

Alcantara moves for the disclosure of the identity of the four confidential informants noted in the discovery, and requests that they be made available for interview or use as a witness. He argues that their identities and availability are necessary to allow him to prove his defense, which is that his actions were not a "conspiracy" but rather were acts among multiple individual actors committing similar offenses. To challenge the existence of the alleged conspiracy, Alcantara therefore needs access to the confidential informants.

The government responds that there are only three confidential human sources ("CHS"), which it refers to as CHS #1, CHS #2, and CHS #3. Alcantara already knows their identities, and substantial discovery has been produced which provides their potential testimony. The government asserts the privileged nature of information about the informants, including their whereabouts, for the following reasons. Eight of Alcantara's codefendants are at-large. All of them are aware of the indictment and this pending case, and all therefore have a reason to resent the informants. Some of the defendants have been disseminating information about the informants to others in Brazil. Some of the defendants have been actively dissuading others from cooperating with the government. Codefendant Rodrigues has a history of violent crime, including shooting a police officer with a firearm in Fortaleza, Brazil. His criminal history from Brazil reflects a homicide-related case and investigation. At-large codefendant Bruno Dos Santos has an open March 2017 homicide investigation in Brazil. Accordingly, the government asserts its privilege of confidentiality absent a showing of a need to obtain information about the informants, and argues that the need to protect the informants outweighs defendants' need for access.

## II.  DISCUSSION

In *Roviaro v. United States*, 353 U.S. 53 (1957), the United States Supreme Court recognized the government's privilege to withhold the identity of an informant. This privilege is based on dual interests of promoting the public interest in individuals coming forward to assist law enforcement and protecting the safety and security of those individuals. The Supreme Court also recognized that an informant's identity should be revealed whenever it would be "relevant and helpful" to an accused's defense or "essential to a fair determination of a cause." *Id.* at 60-

61. "[D]etermining whether to reveal an informant's identity requires balancing the needs of law enforcement against the individual's interest in having a fair trial." *United States v. Rawlinson*, 487 F.2d 5, 7 (9th Cir. 1973). Whether disclosure is warranted is a fact-sensitive, case-by-case inquiry. *Id.*

The Ninth Circuit has identified the following "factors [as] relevant when deciding whether to identify a confidential informant: (1) the crime involved; (2) the possible defenses available to the defendant; and (3) the significance of the informant's testimony." *Gamble v. Deeds*, 956 F.2d 1166 (9th Cir. 1992) (citing *Roviaro*, 353 U.S. at 62). "Mere speculation that the informant's testimony would be helpful is insufficient to compel disclosure." *Id.* (*citing United States v. Sanchez*, 908 F.2d 1443, 1451 (9th Cir. 1990)); United States v. Sai Keung Wong, 886 F.2d 252, 255–57 (9th Cir. 1989) ("The mere suspicion that information will prove helpful is insufficient to require disclosure." (citation omitted)). The burden is on the defendant to demonstrate the need for disclosure. *United States v. Fixen*, 780 F.2d 1434, 1439 (9th Cir. 1986).

The government is not required to disclose an informant's whereabouts even when his identity is already known by the defendant. Such information is still privileged. *United States v. Long*, 533 F.2d 505, 508 (9th Cir. 1976) (stating that "the informer privilege continue[s] to serve its intended purpose despite the transmittal of the informant's name to counsel"). A court must balance the public interest in nondisclosure of the informant's whereabouts against the defendant's need for disclosure. *Rovario*, 353 U.S. at 62.

**A. Alcantara already knows the identity of the three confidential sources**

The government indicates that the confidential sources are referred to by name throughout the discovery, including some source reporting, such as FBI and New Jersey state police reports documenting CHS #1's proffer after being arrested in Atlantic City, New Jersey while conducting fraud with Alcantara, Rodrigues, Correia, Rego, and others. CHS #1's true name, former address, and telephone number were included in the discovery, and apparently, Correia's investigator has

contacted him.² Additionally, text messages sent to CHS #1 by Alcantara and some his co-defendants, such as Correia, are in the discovery. The government indicates that the discovery contains numerous surveillance photographs, videos, and audio recordings of CHS #1 and CHS #2, for example, during multiple controlled operations where Alcantara and his co-defendants are recorded committing credit card fraud. Alcantara has been provided agent surveillance photos, a video and audio body-recording made by CHS #1 when he purchased stolen goods from Alcantara, and surveillance from an airplane of Alcantara when he drove to meet CHS #1 to conduct the transactions. Finally, Alcantara and his codefendants have been provided dozens of FD-1023 confidential source reporting documents and written reports regarding what the CHSs have done and said in relation to individual defendants.

**B. Alcantara's need to interview informants**

Alcantara argues that a principal issue in this case is the extent to which he should be responsible for the actions of other individuals in this case. In other words, he asks whether he should be held responsible for the actions of his co-defendants that occurred without his direction or knowledge, or before the date he is alleged to have entered a conspiracy. He argues that the informants link him to his co-defendants, and that they all actively participated or were percipient witnesses to the offenses.

Alcantara does not say what he expects or hopes the confidential informants might say regarding the allegations, or what he believes would be helpful or even relevant to his defense. Alcantara believes it is likely they will have some useful information. As described by the government, examples of which are sealed and attached to the government's response, Alcantara has received substantial discovery regarding his role, and the roles of others, including each CHS, in the charged offenses. Based upon the government's discussion of the evidence, this is not a case which turns on the reliability or credibility of any informant. Regarding his argument that he is not responsible for the actions of his co-defendants as part of a conspiracy, a person may be a

---

² Surprisingly, Correia's joinder does not mention any contact between his investigator and CHS#1.

member of a conspiracy even though he does not know all of the purposes of, or participants in, the conspiracy. *United States v. Escalante*, 637 F.2d 1197, 1200 (9th Cir. 1980). The law of conspiracy does not require that the government prove that all of the defendants met together at the same time and ratified the illegal scheme. *United States v. Perry*, 550 F.2d 524, 528 (9th Cir. 1997). For these reasons, even if a CHS had information that Alcantara was not associated with a particular co-defendant, that evidence would not be helpful to his defense.

### III. CONCLUSION

The government has justified its assertion of privilege regarding CHS information. Despite receiving substantial discovery and knowing the identity of the informants, Alcantara does not adequately explain the significance of their testimony to his defense. Ultimately, the court finds that Alcantara has not met the burden of demonstrating that the need for the requested disclosure outweighs the privilege to withhold informant information.

Based on the foregoing and good cause appearing therefore,

IT IS HEREBY ORDERED that the Motions for Joinder by Defendants Filho (ECF No. 257), Correia (ECF No. 264), and Andre Rodrigues (ECF No. 270), are GRANTED.[3]

IT IS FURTHER ORDERED that Defendant Alcantara's Motion to Compel (ECF No. 256) is DENIED.

DATED: July 2, 2018

C.W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] Each joining defendant indicates that he is similarly situated to Alcantara, and provided no additional analysis of the need for additional confidential information.